*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JONES/MORRIS, Minors.

UNPUBLISHED
October 30, 2025
12:30 PM

No. 374019
Wayne Circuit Court
Family Division
LC No. 2015-521480-NA

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order finding probable cause to support the allegations in the petition for removal concerning her six minor children, raising three challenges: that the trial court erred by limiting her testimony surrounding the events supporting the petition; that there was insufficient evidence to conclude that it was not in the children's best interests to remain in her care; and that the trial court erroneously concluded the Department of Health and Human Services (DHHS) made reasonable efforts to avoid removing three of her children from her care and was not required to do so for the others because those children were placed with family. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

DHHS first became involved with respondent-mother in 2015 when it filed a petition for removal of three of her minor children, DJJ, JJJ1, and JJJ2. The children were removed from the home and temporarily placed with their biological father, JS. Ultimately, the trial court returned them to respondent-mother's care in July 2018 after finding that she was "mostly compliant" with DHHS's treatment plan, which included participating in parenting classes, psychological and psychiatric evaluations, drug screens, and substance abuse assessments and services. Per the trial court's order, DHHS was to supervise the reunification of the children, and respondent-mother was to complete her psychiatric evaluation.

After a dispositional review hearing in October of 2018, those children (plus JS and respondent-mother's subsequently born fourth child, JJJ3) were again removed from respondent-mother's care and placed in JS's care. Eventually, in November 2019, a trial court found that

-1-

returning the children to respondent-mother's care would no longer present a substantial risk of harm to their well-being and fully restored her parental rights. Unfortunately, this story does not end in 2019.

Five years later, respondent-mother's conduct again resulted in the involvement of police, DHHS, and ultimately this appeal. On three separate occasions, she attempted to drop off some or all six of her children—her four with JS and two others, DJM1 and DJM2 (fathered by DM)— at a family member's house with little or no notice to the family member. When respondent-mother learned the family member was not home or refused to provide the care she requested, instead of taking the children with her, she called law enforcement to request that Children's Protective Services (CPS) come and get the children because she did not want to care for them. Police officers also involuntarily took her to Sinai Grace Hospital due to her erratic and mentally concerning behavior, which manifested further during transport (banging her head on the backseat of the police cruiser) and while hospitalized (tying a bedsheet around her neck during her stay at the hospital).

After a hearing in front of a court referee concerning these facts alleged in DHHS's petition, a referee recommended authorization of the petition. Respondent-mother appealed the recommendation to the trial court, but the court affirmed the referee's recommendation that there was probable cause that one or more of the allegations in the petition were true and fell within MCL 712A.2(b). This appeal by right followed.[1]

## II. LACK OF DUE PROCESS

Respondent-mother first argues that the court abused its discretion when it did not permit respondent-mother to make an offer of proof or introduce certain testimony during the probable-cause hearing before the referee. Respondent-mother also argues that the failure to allow this testimony deprived her of due process. We disagree.

"It is well established that parents have a significant interest in the companionship, care, custody, and management of their children." *In re Williams*, 333 Mich App 172, 179; 958 NW2d 629 (2020), quoting *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993) (quotation marks omitted). This interest is an element of liberty and protected by due process. *Id*. "Whether child protective proceedings complied with a parent's right to due process presents a question of constitutional law," which, if properly preserved, this Court reviews de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). This Court also reviews de novo whether the court properly selected, interpreted, and applied the relevant statutes and court rules. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). A trial court's general method of conducting court proceedings, however, is reviewed for an abuse of discretion. *In re King*, 186 Mich App 458, 466; 465 NW2d 1 (1990).

"Child protective proceedings are initiated when a petition is filed in the trial court that contains facts constituting an offense against a child under MCL 712A.2(b) of the juvenile code,

---

[1] The two fathers to the minor children (JS and DM) are not parties to this appeal, although, at times, both were respondents in the case.

MCL 712A.1 *et seq*." *In re Long*, 326 Mich App 455, 459; 927 NW2d 724 (2018). "At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citations omitted). When the child has been placed with someone other than his or her parents, the referee must find whether "it is contrary to the welfare of the child to remain at home and the reasons supporting that finding." MCR 3.965(C)(3). In making these findings, the referee may rely on hearsay evidence if the evidence possesses adequate indicia of reliability. MCR 3.965(C)(3). MCR 3.965(B)(9), in turn and as relevant to this appeal, requires that the respondent be allowed "an opportunity to deny or admit the allegations and make a statement of explanation."

There is no dispute that respondent-mother testified at the hearing and denied that she was unwilling to care for her children. Thus, the record reveals that respondent-mother received at least the statutorily-required opportunity to admit or deny the allegation or to provide a statement of explanation. Although she does not dispute that she tried to drop off her children with others on three occasions, she claims error in the fact that the referee did not permit her to provide robust testimony regarding why she felt justified in taking the actions she did to demonstrate that her children should not be removed from her care. She, however, does not identify on appeal what testimony she sought to introduce or why it was relevant during the probable-cause hearing. But "[a] party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position," so she has abandoned this argument and we have no obligation to review it. *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019).

Even if the argument were not abandoned, as an initial matter, the record evidence contradicts her claim that the trial court did not allow her to make an offer of proof as to her testimony. Before she was called to testify, the court inquired of respondent-mother's counsel: "What is your offer of proof what she is going to testify to?" Counsel responded:

> My offer of proof is going to be the testimony about what happened on those occasions and why she did it which they're attributing to mental health and neglect of the children which she has a reasonable explanation for each of those. And I also wanted to call her to talk about that these children, you know, what the history of the case was in terms of the children were not—there was no removal order . . . .

Thus, respondent-mother's argument that the trial court erred by not allowing her to make a proof of her testimony is without support in the record.

Moreover, "[d]ue process requires fundamental fairness . . . ,' *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021) (quotation marks and citation omitted), and no caselaw provides that applying the Rules of Evidence—and its corresponding relevancy requirement—to child protective proceedings renders those proceedings fundamentally unfair. The testimony that respondent-mother was attempting to elicit—the motivations for her actions—was not relevant to whether DHHS established probable cause that she failed to care for her children. While under MCR 3.965(B)(9), the trial court is to "allow the respondent an opportunity to deny or admit the allegations and make a statement of explanation," respondent's proposed testimony went beyond these limited boundaries.

In sum, respondent-mother cannot show that the trial court abused its discretion when it did not permit her to testify to matters irrelevant to whether DHHS established probable cause or that the proceedings below were so fundamentally unfair so as to rise to a due-process violation.

### III.   PROBABLE CAUSE DETERMINATION

Next, respondent-mother argues the trial court erred when it found that it was contrary to the welfare of the children to remain in her care. In her view, her failure to provide care for her children on three occasions and her involuntary treatment at the hospital were insufficient to satisfy that standard. On abuse-of-discretion review of the trial court's decision that DHHS presented sufficient evidence to establish probable cause to authorize the petition, *In re KNK*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 370841); slip op at 3, we disagree.

"An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *In re Jones*, 286 Mich App 126, 130; 777 NW2d 728 (2009) (quotation marks and citations omitted). The court's findings of fact, if any, are reviewed for clear error. *In re Conley*, 216 Mich App 41, 42; 549 NW2d 353 (1996). A finding is clearly erroneous in circumstances where evidence exists to support the finding, but the Court is "left with the definite and firm conviction that a mistake has been made." *Id.*

In order to place the children in foster care pending trial, the trial court was required to make findings that it would be contrary to the welfare of those children to remain in the home. MCR 3.965(C)(2) and (3). MCR 3.965(C)(3) states:

> Contrary to the welfare findings must be made. If placement is ordered, the court must make a statement of findings, in writing or on the record, explicitly including the finding that it is contrary to the welfare of the child to remain at home and the reasons supporting that finding. If the "contrary to the welfare of the child" finding is placed on the record and not in a written statement of findings, it must be capable of being transcribed. The findings may be made on the basis of hearsay evidence that possesses adequate indicia of trustworthiness. If continuing the child's residence in the home is contrary to the welfare of the child, the court shall not return the child to the home, but shall order the child placed in the most family-like setting available consistent with the child's needs.

According to respondent-mother, refusal to pick up her children and her involuntary treatment at Sinai Grace Hospital for mental health issues "does not rise to the level of contrary to the welfare to remain in the home." The trial court disagreed:

> Based on the testimony presented, I will find that [DHHS] has established probable cause for the claim that was she neglected her children. It could be that they were with her a number of days where the mother called the police and informed them that she was unwilling to take care of her children and that they should call CPS in care of her children.
>
> Now, while the mother may have had some disagreement with father and their plan was that other than what they expected that is no justification to not care

-4-

for these children and call the police and expose them to the trauma of raising the children and other people in the agency.

Respondent-mother does not appear to argue that the testimony presented by a DHHS caseworker was insufficient for the trial court to make such a finding; rather, she asserts her failure to care for her children and hospital treatment for mental health episodes does not endanger the welfare of her children. Once again, respondent-mother has abandoned this issue by failing to provide us with any developed argument or authority demonstrating that such allegations are insufficient in a petition for removal. See *Seifeddine*, 327 Mich App at 519.

And if we overlooked that failure, we see no clear error in the factual findings supporting the probable-cause determination. The caseworker testified that, on June 19, 2024, respondent-mother called law enforcement and informed them "to contact CPS to come get her children" because "[s]he was refusing to care for them"; law enforcement then took her to Sinai Grace Hospital with concerns that she was "having a mental breakdown." In addition, the caseworker stated that, on August 24, 2024, respondent-mother called law enforcement to JS's home, causing JS to take DJM, JJJ1, JJJ2, and JJJ3 to the home of their maternal grandmother. According to the caseworker, after learning this, respondent-mother "contacted law enforcement and refused to take the children" because JS "had not bought them new school clothes." Lastly, the caseworker recounted the events of August 29, 2024, when respondent-mother took DJM1 and DJM2 to their paternal great-grandmother's house and dropped them off on the porch. The caseworker stated that law enforcement was called again because neither respondent-mother nor DM would come and pick up the children.

The caseworker testified that law enforcement took respondent-mother into custody after the August 29 incident for child abandonment and placed her into a cruiser, at which point, respondent-mother "started banging her head on the side of the car screaming and yelling as the police took her to Sinai Grace." The caseworker stated that she spoke with respondent-mother afterwards, who informed the caseworker that "she did that on purpose, the actions in the back of the car because she had things to do that weekend and she didn't want to get arrested." The caseworker was also informed that while respondent-mother was at the hospital, she wrapped a sheet around her neck.

Respondent-mother's argument that her actions between June and August 2024 were not contrary to the welfare of her children is unpersuasive. On three separate occasions, she left her minor children at homes where the caregivers were either not present or unavailable to watch the children. Yet, instead of simply taking the children to care for them, she contacted law enforcement and CPS in an effort to have them care for the children. In addition, respondent-mother exhibited disturbing behavior in front of the children (including being arrested and acting irrationally in the police cruiser) and also demonstrated that she was a danger to herself when she allegedly wrapped a sheet around her neck while at the hospital. Thus, on the basis of these facts, the trial court did not err when it concluded that it would be contrary to the welfare of the children to remain with respondent-mother.

## IV. REASONABLE EFFORTS BY DHHS

Lastly, respondent-mother takes issue with the specificity of the trial court's reasonable-efforts order. We are not persuaded that she is entitled to relief concerning this issue.

In contrast to the dispositional stage, when making a pretrial placement of a minor child, the trial court must make findings regarding reasonable efforts to prevent or eliminate the need for removal. MCR 3.965(C)(3)(d); *In re Barber/Espinoza*, ___ Mich ___, ___; ___NW3d ___ (2025) (Docket No. 167745); slip op at 16. In addition, and again different with the dispositional stage, "the standard of proof at the preliminary hearing is the relatively low bar of probable cause." *In re Barber/Espinoza*, ___ Mich ___, ___; ___NW3d ___ (2025) (Docket No. 167745); slip op at 16. At bottom, MCR 3.965(C)(4) prescribes that "[i]n making the reasonable efforts determination under this subrule, *the child's health and safety must be of paramount concern to the court*." (Emphasis added.) If reasonable-effort findings were already made in a previous proceeding, they may be incorporated into an order of removal. MCR 3.965(B)(13)(b) (stating that if the court authorizes the petition, it "may order placement of the child after making the [reasonable-effort] determinations specified in subrule (C), *if those determinations have not previously been made*") (emphasis added).

Respondent-mother does not argue that DHHS failed to make reasonable efforts, and instead contends on appeal that the trial court's order is insufficient because it does not "state with particularity its findings nor are they explicitly documented in the trial court's order." We cannot agree.

During the first hearing held on September 12, 2024, the caseworker testified that, to prevent removal of the children, she gave respondent-mother "a community resource guide" and "attempted multiple times to set up safety plans with [her]." The caseworker explained that "[w]e attempted to hold the team decision making meetings" and "attempted to put the safety plans in place." According to the caseworker, respondent-mother "did agree at some point, but then did cancel them." The caseworker also stated that DHHS "[p]rovided resources for mental health and counseling."

While the order appealed by respondent-mother does not contain detailed findings regarding the reasonable efforts undertaken by DHHS, the order states that "reasonable efforts to prevent or eliminate removal of the child(ren) from the home were made as determined in a prior order." The prior order resulted from the emergency removal hearing on August 29, 2024, where the Court "made findings of fact that [DHHS] made reasonable efforts to prevent removal and that they've investigated, talked with police and medical staff." In the resulting order taking DJM1 and DJM2 into custody, the court found that reasonable efforts were made regarding those children:

> CPS has investigated, talked with police and medical staff. CPS tried to make a safety plan to which the mother would not agree. The parents have been given a community resource guide by CPS. The mother has had a psychological evaluation and counseling since June, 2024.

-6-

Similarly, in the September 6, 2024 amended order taking DJJ into custody, the court found: "Mom was provided a resource guide regarding mental health and counseling services and parenting education. She's been given a psychological evaluation." For these reasons, the trial court's reasonable-efforts order concerning DJM1, DJM2, and DJJ is sufficient.

Concerning JJJ1, JJJ2, and JJJ3, the trial court noted in its order after pretrial hearing that those children were to remain at home with their father. Under MCR 3.965(B)(13)(a), the trial court "may release the child to a parent, guardian, or legal custodian . . . ," or, under MCR 3.965(B)(13)(b), "may order placement of the child after making the determinations specified in subrule (C)," which include the reasonable-effort findings. In other words, under MCR 3.965(C)(4), only "[w]hen the court has *placed* a child with someone other than the custodial parent, guardian, or legal custodian [must] the court . . . determine whether reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required." (Emphasis added.) "Placement," under the court rules, is defined as a "court-approved transfer of physical custody of a child to foster care, a shelter home, a hospital, or a private treatment agency." MCR 3.903(B)(10). Thus, because JJJ1, JJJ2, and JJJ3 were placed with their father, and were not "placed" in foster care or other home, the trial court was not required to make findings regarding reasonable efforts at this stage concerning those children.

Her claim of error regarding reasonable-efforts is therefore without merit.

V.    CONCLUSION

In sum, respondent's arguments that the trial court plainly erred in concluding that reasonable efforts were made prior to removing the children or were not required to be made because the children were placed with the putative father are not persuasive. The trial court correctly determined DHHS met the statutory requirements prior to removing the children from respondent-mother's care for the safety and welfare of the children. For these reasons, we affirm the trial court's judgment.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock